In the United States District Court
For the Eastern District of Pennsylvania

United States of America
V
Mark Manigault

Criminal No. 17-90-01
Hon. R. Barclay Surrick

## Layman to the law Prose Litigant Defendant Mark Manigault's Motion to Suppress Physical Evidence

### I. Introduction

The defendant, Mark Manigault, respectfully request that this Honorable Court suppress any and all physical evidence, included but not limited to the Taurus 9mm PT809 firearm recovered by officers, as well as any evidence obtained thereafter as fruits of an illegal seizure and search in violation of the Fourth Amendment of the United States Constitution.

### II. Statement of Alleged Facts by the government

On September 27, 2016, Philadelphia police officers stopped, arrested, and searched Mr. Manigault outside of the Katnip Bar on the 5400 block of Osage Ave in Philadelphia, Pennsylvania. Thereafter, officers recovered a firearm from the front wheel of a Ford Fusion parked nearby on Osage Ave. During the ensuing investigation, officers obtained surveillance footage from the Katnip Bar as well as footage from a private residence located at a residence on the 5400 block of Osage Ave.

The government has charged Defendant, Mark Manigault, with possession of the firearm recovered from the Ford Fusion pursuant to 18 U.S.C. 922(g)(1).

### III. Argument

Mr. Manigault moves to suppress any and all physical evidence, included but not limited to the Taurus 9mm PT 809 firearm recovered by officers as well as any evidence obtained thereafter as fruit of an illegal seizure and search. The officers stop, arrest, and search of Mr. Manigault was wholly unsupported by reasonable suspicion or probable cause. Therefore, all evidence recovered obtained thereafter should be suppressed as fruits of an illegal seizure & search in violation of the Fourth Amendment of the United States Constitution.

Wherefore, defendant prays that this Honorable Court suppress the 9mm PT 809 firearm recovered by detectives as well as any evidence obtained thereafter and forbid any testimony or comment respecting the same.

Respectfully Submitted

Dated 1-21-18

By Mark Manigault
Mark Manigault Pro se litigant
Federal Detention Center Philadelphia
P.O. Box 562
Philadelphia, Pa. 19106

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the Layman to the Law Prose Litigant, Defendant, Mark Manigault's Motion to Suppress Physical Evidence upon the following in the stated manner:

**Via ECF Filing and Email:**

Thomas M. Zaleski, Esq., AUSA
U.S. Attorney's Office
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106
tom.zaleski@usdoj.gov

**Via Mail:**

Mark Manigault
ID # 75870-066
Federal Detention Center
P.O. Box 562
Philadelphia, PA 19105

**2/26/2018**
DATE

Christopher G. Furlong, Esq.

For the Eastern District of Pennsylvania

United States of America
v
Mark Manigault

Criminal No 17-90-01

Hon R. Barclay Surrick

## Memorandum of Law in Support of Defendants Motion to Suppress Physical Evidence

Layman to the law Prose litigant Mark Manigault presents this Motion to suppress any and all physical evidence, included but not limited to the Taurus 9mm PT 809 firearm recovered by officers as well as any evidence obtained thereafter as the fruit of an illegal search and seizure in violation of the Fourth Amendment of the United States Constitution, and in support, submits the following memorandum of law.

On Sept 27, 2016 around 10:00 pm the defendant Mark Manigault and Tamir Justin were lawfully seated on a set of steps of a residence located on the 5400 block of Osage Ave in Philadelphia, Pennsylvania. While on patrol in uniform and in a marked SUV, Philadelphia Police Officer Roher and Olesik turned left on Osage avenue from 54th St and drove past Mr. Manigault who the officers say they recognize because of Mr. Manigault's alleged "reputation" and prior contacts with the officers. There is no indication that the officers had previously arrested Mr. Manigault. Thereafter, the officers decided to circle the block and investigate Mr. Manigault. (Roher Statement)

Moments later, for no articulable lawful reason other than their bias against Mr. Manigault, the officers parked their police SUV in the middle of the street directly next to the Katnip Bar, thereby stating both foot and vehicle traffic. The officers were in a marked police cruiser, in uniform, and carrying their service weapons.

Officers Roher and Olesik then exited their vehicle and approached Mr. Manigault as he was simply seated outside the front entrance of the Katnip Bar. Officers then searched Mr. Manigault for weapons, then ran his ID to check for warrants through the NCIC Cedar Interview and asked if he had any firearms. After interrogating Mr. Manigault, officer Roher began to walk west bound down Osage Ave using his

flashlight to examine cars parked on that street. While Mr. Manigault was in custody, Officer Loher discovered a firearm resting on top of the rear passenger side tire of a Mazda sedan parked on Osage Ave. Id.

With no additional information, Mr. Manigault who was already arrested, was then secured in the back of the officers marked SUV. Id. Upon securing Mr. Manigault, the officer again walked back down Osage Avenue where a second firearm was discovered on top the front wheel of a parked Ford Fusion on Osage Avenue. Id. There after, officers obtained surveillance footage from the Katnip Bar. With Mr. Manigault still in custody officers recovered another video from a private residence on the 5400 block of Osage Ave.

Mr. Manigault has been charged with violating 18 U.S.C. 922 (g)(1) and remains in federal custody.

<u>The firearm recovered and any other evidence that flowed from the investigation must be suppressed because Police Officers profiled Defendant and placed him in custody without reasonable suspicion or probable cause</u>

There was nothing suspicious about Mr. Manigault and Mr. Austin lawfully conversing on a public sidewalk that would reasonably suggest that Mr. Manigault had been involved in any sort of criminal activity and as such, any and all evidence that derived from the unlawful seizure, including but not limited to the Taurus 9mm PT 809 firearm should be suppressed. At best, Mr. Manigault was profiled, stopped, and arrested by officers based on his alleged "reputation" in violation of his rights under the Fourth Amendment to the United States Constitution. At worst, he was arrested because of some other bias of the Officers.

The Fourth Amendment to the United States Constitution protects "The rights of the people to be secure in their person, papers, and effects, against unreasonable searches and seizures..." U.S. Const. Amend IV. Police have constitutional authority to conduct a limited investigatory stop if an officer has reasonable suspicion that criminal activity may be afoot. See United States v Sokolow, 109 S. CT 1581 (1989)(quoting Terry v Ohio, 392 U.S. 1, 30, 88 S CT 1868, 20 L.Ed 2d 889 (1968). However, the police officer must demonstrate that the stop was based on something more than an inchoate and unparticularized suspicion or hunch. "Terry 392 U.S. 1 at 27) Accordingly, the reasonable suspicion of an officer who stops and briefly detains a person for questioning must be upon specific facts which taken together with all rational inferences from these facts, reasonably suggest that a suspect has been involved in criminal activity. See Terry v Ohio, 392 U.S. at 21, 30; United States v Rickus, 737 F2d 360, 365 (3rd cir)1984. Reasonable suspicion is always evaluated as of the moment of seizure, and courts can not consider facts that develop after that moment. "United States v Lowe, 791 F3d 424, 436 (3rd cir 2015)

In determining whether an officer's suspicion amounts to reasonable suspicion, the court should consider the totality of the circumstances. See United States v Cortez, 449 U.S. 411, 417, 66 L Ed 2d 621, 101 S CT. 690 (1981). A totality of the circumstances analysis warrants consideration of a number of factors, including: (1) the reliability of the information provided to officers that served as the impetus for the stop, (2) the reputation of the area in which the stop occurred for criminal activity; (3) the number of persons in the vicinity; (4)

the time of day or night; (5) the suspects behavior when the officers came into his purview; (6) the geographical and temporal proximity of the stop to the alleged crime (7) the particularity of the description and the extent to which the suspect matched it; (8) the officers judgements and inferences, which may be based on their own common sense or may draw upon their training and experience. See Wardlow, 528 U.S. at 124; Torres, 534 F3d at 210; United States v Brown 159 F3d 147, 149-50 (3rd cir 1998); United States v Goodrich, 450 F3d 552, 561 (3rd cir 2006); Bonner, 363 F3d at 217; Robertson, 305 F3d at 167

Probable cause exist where the facts and circumstances within the officers knowledge and of which they had reasonable trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. Brinegar v United States, 388 U.S. 160 175 (1949) Carroll v United States, 267 U.S 132, 162 (1925) The probable cause standard involves a level of suspicion considerably less than proof of wrongdoing by a preponderance of the evidence "Probable means a fair probability." Illinois v Gates, 462 U.S. 213 (1983) Probable cause is evaluated and an objective standard; whether a prudent person under the totality of the circumstances" would have had the requisite belief of probable cause Terry v Ohio, 92 U.S. 1 (1968)

Furthermore, the exclusionary rule mandates that evidence derived from constitutional violations may not be used at trial because illegally derived evidence is considered "fruit of the poisonous tree" United States v Pellullo 173 F3d 131 (citing Wong Sun v United States) 371 U.S. 471, 9 L.Ed. 2d 441, 83 S CT 407 (1963)

i. The officers Arrested Mr. Manigault without Reasonable Suspicion or Probable cause.

The firearms recovered and all evidence derived therefrom must be suppressed because the officers arrested Mr. Manigault based on nothing more than his alleged "reputation" for carrying firearms and their personal bias against Mr. Manigault.

In United States v McCray, 148 F supp 2d 379 (2001) the defendant was indicted for possession of a firearm by a felon pursuant to 18 U.S.C. 922 (g)(1). Shortly before his arrest, officers observed an individual they believed to be Jerry Bellflower crossing the street in the area they were patrolling. Id at 382 According to the officer, Bellflower was a "subject with whom he had prior contact and whom he believed was involved in drug activities." Id After circling the block, officers stated that they saw Bellflower huddled with two other people, including McCray, facing each other with their hands above their waist engaged in what officers believed to be a drug transaction. Id at 383. However, the officer admitted that he could not see the hands of any of the people, nor did he see anything pass from one hand to another. Id Accordingly, the court held that the facts in that case suggested no objective factors that would establish reasonable suspicion within the context of this stop; explaining that despite the officers vague and inconsistent testimony, the one fact upon which both officers agreed that neither saw anything pass between any of the individuals hands. Id at 388 Importantly, the court stated it is certainly not suspicious conduct for people who know each other to stand in their own community and have a conversation late at night on a summer evening. Id at 387 (Emphasis added) Therefore, the court suppressed all items seized and all statements made as fruit of an illegal stop. Id 488.

Here the facts of the case are even more egregious than those in McCray because Mr. Manigault was lawfully and unsuspiciously sitting on the steps of the residence on Osage Avenue. Officers observed nothing suspicious about Mr. Manigault's behavior that would reasonably suggest that Mr. Manigault had been involved in criminal activity because, as the court held in McCray, merely congregating on the sidewalk is not suspicious or criminal. It is however lawful and socially necessary. Here, Officer Olesik testified that "Mr. Manigault was just sitting on the steps of a private residence, thats it". (Olesik, N.O.T. at 51) (Emphasis added) Moreover, when officers decided to circle around the block and investigate (Roher Statement) and completely blocked off the center of the intersection of 54th street and Osage Avenue with their police cruiser, they again observed Mr. Manigault "just sitting in front of the bar, thats it". (Id at 55) (Emphasis added). Furthermore, Officer Olesik testified that there was "plenty of people wandering around" (Id at 65)

Furthermore "a person may not be detained even momentarily without reasonable objective grounds for doing so. (Florida v Royer 460 U.S. 498, 103 S.CT 1319, 75 L.Ed 2d 229) The fourth Amendment requires at least a minimal level of objective justification for making the stop. (Illinois v Wardlow 528 U.S. at 123 S.CT 673, 145 L.Ed 570 (2000) Any evidence obtained pursuant to an investigatory stop (also known as Terry stop or a stop and frisk) that does not meet this exception must be suppressed as fruit of the poisonous tree" United States v Brown, 448 F 3d 239, 244 (3rd cir 2006)(citations omitted)

Mr. Manigault was in custody the moment the officers blocked traffic at the intersection of 54th and Osage Avenue with their police SUV and approached immediately upon exiting their vehicle, officers began a custodial detention and interrogation of Mr. Manigault. The

The officers clearly seized Mr. Manigault when they searched him, questioned him about firearms, and seized his identification to run through the N.C.I.C. to check for warrants (Roher Interview) Mr. Manigault complied with the officers commands, which would have conveyed to a reasonable person that his movements were restricted. This is clear indicia of a custodial interrogation, a hands on search, and warrant check by officers Olesik and Roher despite the complete absence of any reasonable suspicion or probable cause to approach and engage Mr. Manigault. Further more Officer Olesik subjected Mr. Manigault to further public humiliation by putting his hands in Manigault's pants and pushing Mr. Manigault in the bottocks to the police cruiser, violating his rights as a human being. There was no probable cause, reasonable suspicion or resistance to justify touching Mr. Manigault in this fashion. (Katnip video)

In Utah v Strieff 195. L.Ed 408, 136 S.CT 2062 L.Ed 2d 400 (2016) The court used the three factors articulated in "Brown v Illinois, 422 U.S. 590, 95 S.CT, 2254, 45 L.Ed. 2d 416 (1975) to guide their analysis. "Temporal proximity" between the unconstitution conduct and the discovery of evidence. Id, at 603, 95 S.CT. 2254, 45 L.Ed. 2d 416. The presence of intervening circumstances." Id, at 603-604, 95 S.CT 2254. 45 L.Ed. 2d 416. Third and particularly signicant "purpose and flagrancy of the official misconduct." Id. at 604, 95 S.CT, 2254, 45 L.Ed 2d 416.

Instead of carrying on their routine patrol, the officers decided to circle the block and began a baseless search of Mr. Manigault. Accordingly when the courts examine the facts of this case under the totality of the circumstances, officer Roher and Olesik had no reasonable suspicion in relation to Mr. Manigault because there was absolutely nothing to suggest that Mr. Manigault had done anything wrong besides have a conversation on a set of steps in his neighborhood. Yet they subjected him to a constitutionally violative search and seizure of his person. They interrogated Mr. Manigault, and inappropriately escorted Mr. Manigault

to the police cruiser with his hands (officer Olesik) in Mr. Manigault's pants, while pushing him in the buttocks in public. (Katnip Video) There was no evidence that officers observed a bulge in Mr. Manigault's person, indicative of a weapon, nor that he was making any sort of furtive movements. Furthermore, the officers were not responding to a radio call nor did they receive a tip that any one was armed with a fire arm in that area.

Accordingly when the court analyzes the totality of the circumstances under the factors in Wardlow, factor(8) demonstrating that the only reason Mr. Manigault was approached by officers is either because he was profiled due to his "reputation" allegedly known by Officers Olesik and Roher or some other bias of the officers. Additionally under factor(5) of Wardlow, the officers admitted that they never observed Mr. Manigault with a firearm, and they did not receive any firearms related calls to that specific area. What they did observe was Mr. Manigault gathering lawfully and conversing on a set of steps out side a private residence on Osage Ave as well as the Katnip bar a few moments later. This is precisely the type of victimization and biased profiling by the police that the court in McCray declared citizens are entitled to be free from. As a result of this unconstitutional arrest, Mr. Manigault was detained for nearly 60 hours, interrogated, and had his D.N.A. taken without being brought before a magistrate judge for arraignment,[2] all in an expedition for "evidence in hopes that something might turn up." (Brown v Illinois 422 U.S. 605, 95 S.Ct 2254, 45 L.Ed 2d 416) The government with Mr. Manigault in custody, continued their investigation and allegedly recovered a second video to be introduced against Mr. Manigault at trial. The Government cannot meet its burden of demonstrating the existence of a bonafide emergency or other

circumstances that would account for the egregious delay in Mr. Manigault's release.

(Rodriguez v United States) 575 U.S. 135 S. Ct 1609, 191 L.Ed 2d 492-499 500 (2015) The officer deepens the breach when he prolongs the detention just to fish for evidence of wrong doing.

Therefore, an analysis of the totality of the circumstances demonstrates that officers did not have reasonable suspicion or probable cause to stop and arrest Mr. Manigault because there was nothing suspicious about Mr. Manigault's behavior of lawfully congregating on a sidewalk in his community that would reasonably suggest to anyone that Mr. Manigault had been involved in any sort of criminal activity. Accordingly, Mr. Manigault's seizure, arrest, and subsequent search were unconstitutional, thus the firearm and any other evidence recovered thereafter should be suppressed as a matter of law.

## Conclusion

Mr. Manigault's detention was not supported by reasonable suspicion or probable cause, but rather based solely on the officers bias and profiling of Mr. Manigault. Accordingly, Defendant request this Honorable Court suppress the firearm recovered and any and all other evidence recovered thereafter because the evidence derived as a direct result of defendants unlawful arrest, and subsequent search in violation of the Fourth Amendment of the United States Constitution.

"Foot Notes"

1# Where there was no probable cause to arrest petitioner, no consent to the journey to the police station, and no prior judicial authorization for detaining him, the investigative detention at the station for investigative purposes violated petitioner's rights under the fourth Amendment, as made applicable to the states by the fourteenth Amendment; Hence evidence obtained was inadmissable fruits of an illegal detention. When the police, without probable cause or a warrant, forcibly remove a person from his home and transport him to the station, where he is detained, for investigative purposes, such a seizure, at least where not under judicial supervision, is sufficiently like an arrest to invoke the traditional rule that arrest may constitutionally be made only on probable cause. See Hayes v Florida, 470 U.S. 811, 915-16, 84 L.Ed. 2d 705, 105 S. Ct. 1643 (1985)

2# In order to satisfy Gerstein's promptness requirement, a jurisdiction that chooses to combine probable cause determinations with other pretrial proceedings must do so as soon as is reasonably feasible, but in no event later than 48 hours after arrest. Providing a probable cause determination within that time frame will, as a general matter, immunize such a jurisdiction from systemic challenges. Although a hearing within 48 hours may nonetheless violate Gerstein if the arrested individual can prove that his or her probable cause determination was delayed unreasonably, courts evaluating the reasonableness of a delay must allow a substantial degree of flexibility, taking into account the practical realities of pretrial procedures. Where an arrested individual does not receive a probable cause determination within 48 hours, the burden of proof shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance, which cannot include intervening weekends or the fact that in a particular case it may take longer to consolidate pretrial proceeding. See County Riverside v McLaughlin 500 U.S. 44, 55 (1991)