IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 17-90-01 |
| MARK MANIGAULT | : | |

# MEMORANDUM

**SURRICK, J.**  AUGUST 9th, 2019

Presently before the Court are Defendant Mark Manigault's Motion in Limine to Limit Testimony and Video Evidence (ECF No. 155), and the Government's Response in opposition thereto (ECF No. 156). For the following reasons, Defendant's Motion will be denied.

## I. BACKGROUND

On February 16, 2017, a grand jury returned a one-count Indictment charging Defendant with being a felon in possession of a firearm, specifically, a nine-millimeter semiautomatic handgun with serial number TC028448, in violation of 18 U.S.C. § 922(g)(1). (Indictment, ECF No. 4.) Defendant's trial is currently scheduled for September 30, 2019. (5/23/2019 Order, ECF No. 147.)

Defendant, who is proceeding *pro se* with court-appointed standby counsel, has filed more than twenty pretrial motions. With the instant Motion, Defendant seeks to preclude the Government from introducing: (1) any evidence, including videotape evidence, relative to Tamir Austin, the individual who was with Defendant at the time of the events that led to Defendant's arrest and Indictment in this case; and (2) testimony by Philadelphia Police Officers Eugene Roher and Jeremy Olesik regarding their participation in or roles with the tactical squad of the 18th District or their alleged knowledge of or prior contact with Defendant and Austin.

Defendant contends that both categories of evidence should be excluded as not relevant under Federal Rule of Evidence 401, and as substantially more prejudicial than probative under the balancing test of Rule 403.

The circumstances relevant to the instant Motion are as follows.[1] On the night of September 27, 2016, Officers Roher and Olesik were on patrol in a marked police vehicle in the area of the 5400 block of Osage Avenue. (11/14/2018 Hr'g Tr. 24-25, 110, ECF No. 106 (on file with Court).) While on patrol, the officers saw Defendant and Austin sitting on the steps outside the front of a residence at 5407 Osage Avenue. (*Id.* at 25-26, 113.) At that time, Officers Roher and Olesik were partners assigned to the tactical squad of the 18th District. (*Id.* at 19, 21, 107.) As members of the tactical squad, the officers' duties included "address[ing] issues of concern in the area, such as robberies, shootings, [and] drug sales." (*Id.* at 19.) This entailed collecting intelligence on criminal activity and "becom[ing] familiar with the people in the area that [were] committing crime, [and] familiar with the locations that certain individuals associated together." (*Id.* at 19; *see also id.* at 106-07.) The officers testified that Defendant and Austin were both known to them as individuals associated with criminal activity who had previous contact with law enforcement. (*Id.* at 22-23, 107-10.)

Officers Roher and Olesik were surprised to see Defendant and Austin sitting together because, based on the officers' experience, the two men were associated with two different groups that engaged in drug sales—Defendant with a group on Delancey Street, and Austin with a group on Irving Street. (*Id.* at 23, 26-27, 108-09, 113.) In addition, the officers knew that neither Manigualt nor Austin lived on the 5400 block of Osage Avenue. (*Id.* at 90, 113.) The

---

[1] The factual background is derived from the testimony given at the Pretrial Motions Hearings held on November 14, 15, and 16, 2018, and is consistent with factual background recited in both Defendant's Motion in Limine and the Government's response thereto.

2

officers drove past the two men and made eye contact with them. (*Id.* at 28; 11/15/2018 Hr'g Tr. 20, ECF No. 107 (on file with Court).) The officers then circled the block in their vehicle and, when they returned to the 5400 block of Osage Avenue, Defendant and Austin were sitting on a wall near the front of the Katnip Bar, which is located on 54th Street near the intersection with Osage Avenue. (11/14/2018 Hr'g Tr. 28-29, 114.) The officers stopped their car, walked over to Defendant and Austin, and began speaking with them. (*Id.* at 29-30, 115.) Defendant and Austin each lifted their shirts to reveal that they did not have any weapons in their waistbands. (*Id.* at 30, 115.) Officer Olesik briefly returned to the police car and determined by a computer search that there were no active warrants for Defendant or Austin. (*Id.* at 30-31, 115.)

As Officer Olesik continued to talk with Defendant and Austin, Officer Roher walked back toward the location where the officers had first seen the two men and, using a flashlight, looked under the wheel wells of vehicles parked on the street.[2] (*Id.* at 115.) While doing so, Officer Roher saw the black handle of a handgun in the rear, passenger side wheel well of a black Mazda parked facing west on the north side of Osage Avenue. (*Id.* at 31-32, 116, 119; 11/15/2018 Hr'g Tr. 23.) Upon finding the gun, Officer Roher notified Officer Olesik, and the officers placed Defendant and Austin in the back of their police car. (11/14/2018 Hr'g Tr. 31-33, 116-17.) Both officers walked back to the car where Officer Roher had observed the first gun, then continued retracing the route Manigault and Austin had taken. (*Id.* at 34-35.) The officers then saw a second firearm in the front, passenger side wheel well of a different vehicle, a red Ford. (*Id.* at 34-35, 47, 49, 117.) Officer Roher testified that he believed there was one car parked between the black Mazda, where the first gun was located, and the red Ford, where the

---

[2] Officer Roher testified that, in his experience, individuals engaged in criminal activity commonly hide guns under vehicle wheel wells. (11/14/2018 Hr'g Tr. 116.)

second gun was found. (*Id.* at 117-18.) He testified that both vehicles were approximately five to ten feet away from the location where the officers initially saw Defendant and Austin sitting together. (*Id.* at 118.) Officers Roher and Olesik did not remove either gun from the locations where they observed them. (*Id.* at 69, 118.)

Officer Roher then went into the Katnip Bar and viewed the videotape from a security camera at the front exterior of the premises ("Katnip 1 Video"). (*Id.* at 33-34, 36, 118; Gov't Ex. 15.) The officers testified that the Katnip 1 Video shows Austin and Manigault walking on Osage Avenue, then Austin placing an object under the rear, passenger side wheel well of the black Mazda. (11/14/2018 Hr'g Tr. 33-34, 36, 118-19.) Austin and Defendant then continued walking out of the view of the Katnip 1 Video. (*Id.* at 119.) After calling other police personnel to secure the scene, Officers Olesik and Roher transported Defendant and Austin to the Southwest Detective Division for further investigation.[3] (*Id.* at 38-39, 119-20.)

In the early morning hours of September 28, 2016, Detective Dennis Slobodian of the Southwest Detective Division arrived at the scene and recovered the two handguns and the Katnip 1 Video.[4] (11/15/2018 Hr'g Tr. 64, 67, 69, 74-75.) Detective Slobodian also recovered a second video ("Katnip 2 Video"), which depicts the corner of 54th Street and Osage Avenue in front of the Katnip Bar. (*Id.* at 79-80; Gov't Ex. 16.) The Katnip 2 Video shows Defendant and

---

[3] Defendant was released on or about September 29, 2016, after the Philadelphia District Attorney's Office initially declined prosecution. (11/15/2018 Hr'g Tr. 103-04; 11/16/2018 Hr'g Tr. 23-24, ECF No. 108 (on file with Court).) Austin remained in custody and ultimately pled guilty in the Court of Common Pleas of Philadelphia County to charges of firearms not to be carried without a license, possession of a prohibited firearm, and carrying firearms in public in Philadelphia. *See Commonwealth v. Austin*, No. CP-51-CR-0011022-2016 (Phila. Cty. Ct. Com. Pl.).

[4] The handgun recovered from the wheel well of the black Mazda was identified as a black Rossi 357 revolver. (11/15/2018 Hr'g Tr. 69.) The firearm recovered from the wheel well of the red Ford was identified as a nine-millimeter semiautomatic handgun, serial number TC028448. (*Id.* at 67-68, 70.)

4

Austin walking by, then shows Officers Roher and Olesik exiting their vehicle and walking toward the two men, and later shows the officers walking Defendant and Austin to the officers' car. (11/15/2018 Hr'g Tr. 26-27.)

On September 29, 2016, Southwest Detectives recovered a third video from the night of September 27, 2019, obtained from a digital recorder at a private residence in the 5400 block of Osage Avenue (the "Residence Video"). (*Id.* at 123-26; Gov't Ex. 17.) Officer Roher testified that the Residence Video shows Defendant and Austin walking together, then Austin placing an object on the tire of the black Mazda where the officers located the first firearm, then Defendant placing an object in the front, passenger side wheel well of the red Ford where the second firearm was found. (11/15/2018 Hr'g Tr. 15-19.) Approximately two minutes later, the video shows the officers' vehicle passing Defendant and Austin as they sat on the steps in front of 5407 Osage Avenue, then the Defendant and Austin walking on Osage Avenue toward 54th Street, then the officers' vehicle returning to the 5400 block of Osage Avenue, where the officers approached Defendant and Austin in front of the Katnip Bar. (*Id.* at 19-21.) Officer Roher testified that the Residence Video later depicts him walking down the street with his flashlight, observing the first handgun and returning to notify Officer Olesik, then the officers placing Defendant and Austin in the back of their patrol car, then Officer Roher doing another walk through and locating the second gun. (*Id.* at 22-24.)

## II. LEGAL STANDARD

### A. Relevance

Rule 401 broadly defines evidence as relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401; *see also United States v. Green*, 617 F.3d 233, 251

(3d Cir. 2010). "Rule 401's definition of relevance is 'very broad' and 'does not raise a high standard.'" *United States v. Leake*, 396 F. App'x 898, 903 (3d Cir. 2010) (quoting *Gibson v. Mayor and Council of City of Wilmington*, 355 F.3d 215, 232 (3d Cir.2004)). Pursuant to Rule 402, all relevant evidence is admissible unless otherwise provided by the U.S. Constitution, a federal statute, or the Rules. Fed. R. Evid. 402. Moroever, "evidentiary relevance under Rule 401 [is not] affected by the availability of alternative proofs" of the element of the offense to which the evidence pertains. *Old Chief v. United States*, 519 U.S. 172, 179 (1997). In other words, otherwise relevant evidence is not rendered irrelevant simply because other related evidence exists. *Id.* Thus, "[i]f . . . relevant evidence is inadmissible in the presence of other evidence related to it, its exclusion must rest . . . on its character as unfairly prejudicial, cumulative or the like, its relevance notwithstanding." *Id.*

**B.     Rule 403**

As noted above, relevant evidence may be excluded if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Third Circuit has characterized Rule 403 as "creat[ing] a presumption of admissibility." *United States v. Claxton*, 766 F.3d 280, 302 (3d Cir. 2014)). With regard to the issue of prejudice, Rule 403 "does not offer protection against evidence that is merely prejudicial, in the sense of being detrimental to a party's case." *Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980); *see also United States v. Starnes*, 583 F.3d 196, 215 (3d Cir. 2009) ("[U]nfair prejudice 'does not simply mean damage to the opponent's cause. If it did, most relevant evidence would be deemed [unfairly] prejudicial.'" (quoting *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 670))). "Evidence is unfairly prejudicial only when it has 'an undue tendency to suggest decision on an

improper basis, commonly, though not necessarily, an emotional one.'" *United States v. Hagins*, 452 F. App'x 141, 148 (3d Cir. 2011) (quoting Fed. R. Evid. 403, Advisory Committee's Note). Moreover, "[e]vidence should not be excluded under Rule 403 merely because its unfairly prejudicial effect is greater than its probative value." *Claxton*, 766 F.3d at 302. Instead, exclusion is appropriate only if the danger of unfair prejudicial *substantially* outweighs the probative value of the evidence. *Id.*

## III. DISCUSSION

### A. Evidence Regarding Tamir Austin

Defendant seeks to exclude all evidence related to Austin, "other than the mere fact he was present with [Defendant]" on the night of September 27, 2016. (Def.'s Mot. ¶ 19.) Specifically, Defendant seeks to bar the Government from introducing "any evidence concerning the arrest and conviction of Tamir Austin . . . including but not limited to the firearm that was recovered attributed to his possession, [and] any video surveillance evidence showing him in the area of the car where that weapon was found with him placing the item in the car wheel well[.]" (Def.'s Mot., Proposed Order.) According to Defendant, evidence related to Austin and the firearm linked to him should be precluded pursuant to Federal Rules of Evidence 401 and 403 because it is not relevant to the charge against Defendant, and because admission of the evidence would be unfairly prejudicial to Defendant and confusing to the jury.[5]

---

[5] Defendant does not argue that the evidence related to Austin is inadmissible under Rule 404(b) as evidence of "a crime, wrong, or other act" offered to prove Defendant's character or action in conformity therewith. We note that such an argument would be unavailing for two reasons. First, the evidence of conduct attributable to Austin is not offered to prove, and does not adversely reflect on, Defendant's character. *See United States v. Senat*, 698 F. App'x 701, 705 (3d Cir. 2017). Second, "if uncharged misconduct directly proves the charged offense, it is not evidence of some other crime." *Green*, 617 F.3d at 249 (citation and internal quotation marks omitted).

In response, the Government argues that the evidence involving Austin is relevant to the charge against Defendant, noting that it would be virtually impossible to excise Austin's actions from the proof necessary to establish Defendant's possession of the firearm charged in the Indictment. The Government further argues that to sanitize the evidence as the defense urges would distort the facts, mislead the jury, and leave "gaps and gaping holes in the government's case that could not be explained." (Gov't Resp. 7.) At the July 23, 2019 hearing, the Government also clarified that it does not intend to introduce evidence regarding the charges brought against Austin or his subsequent guilty plea or sentencing. (7/23/2019 Hr'g Tr. 13-14.)

We agree with the Government that evidence of Austin's role in the events of September 27, 2016, is probative of facts of consequence in this action. In order to establish that Defendant violated 18 U.S.C. § 922(g)(1), the Government must prove beyond a reasonable doubt that: (1) Defendant has been convicted of a crime punishable by a term of imprisonment exceeding one year; (2) Defendant knowingly possessed the firearm charged in the Indictment; and (3) the firearm had travelled in interstate commerce. *See United States v. Higdon*, 638 F.3d 233, 239-40 (3d Cir. 2011); *see also* Mod. Crim. Jury Instr. 3rd Cir. 6.18.922G (2018). A defendant's possession of a firearm may be actual or constructive. *See United States v. Foster*, 891 F.3d 93, 111 (3d Cir. 2018) (citing *United States v. Caldwell*, 760 F.3d 267, 278 (3d Cir. 2014)). In addition, "[t]he law . . . recognizes that possession may be sole or joint." Mod. Crim. Jury Instr. 3rd Cir. 6.18.922G-4 (2018); *see also United States v. Wiltshire*, 568 F. App'x 135, 140 (3d Cir. 2014) (finding no error in district court's use of Third Circuit model jury instruction regarding possession); *United States v. Lowery*, 265 F. App'x 111, 114 (3d Cir. 2008) (approving use of model jury instruction on joint possession).

8

Here, the evidence Defendant seeks to exclude is directly probative of the possession element of the charged crime. *See Green*, 617 F.3d at 249 ("If uncharged misconduct directly proves the charged offense, it is not evidence of some other crime." (citation and internal quotation marks omitted)). The defense argues that since Defendant and Austin were not charged with conspiracy or otherwise acting in concert, conduct attributable to Austin and the recovery of the revolver are "in no way probative of any evidence as it pertains to [Defendant]." (Def.'s Mem. 2.) We disagree. All of the evidence reflects that Defendant and Austin accompanied each other throughout the events at issue, and the fact that two guns were recovered makes it more probable that Defendant possessed the specific firearm charged in the Indictment.

Similarly, the video evidence of Austin placing an object in the wheel well of the car where the revolver was recovered makes it more probable that Defendant possessed the semiautomatic firearm that was separately recovered from the red Ford's wheel well. *See United States v. Roland*, 545 F. App'x 108, 112 (3d Cir. 2013) (finding testimony about wound sustained by victim in uncharged shooting was relevant to defendant's possession of gun and to gun's operability); *United States v. Elliott*, 235 F. App'x 879, 881 (3d Cir. 2007) (holding that evidence of robbery and shooting that took place shortly before defendant was found in car containing firearm was relevant and probative of possession or joint possession element of crime). Precluding evidence regarding Austin's actions and the recovery of the revolver would severely prejudice the prosecution's ability to counter a defense argument—based on sanitized facts—that Austin, not Defendant, possessed the semiautomatic firearm charged in the Indictment.

Evidence regarding Austin's actions and the recovery of the revolver is also necessary to present a complete and undistorted story to the jury. Without the challenged evidence, the jury

9

may question, and receive no explanation (or an incomplete one) regarding, *inter alia*: (1) why the police detained and arrested Defendant on September 27, 2016, when, at that time, they did not have video evidence of Defendant placing anything where the semiautomatic firearm was recovered; (2) why police returned two days after the incident to search for video evidence regarding the semiautomatic firearm; and (3) why the Government charged Defendant, but not Austin, with possession of the semiautomatic firearm. As the Supreme Court has noted:

> A syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it. People who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters, and jurors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility knowing that more could be said than they have heard. A convincing tale can be told with economy, but when economy becomes a break in the natural sequence of narrative evidence, an assurance that the missing link is really there is never more than second best.

*Old Chief*, 519 U.S. at 189.

For similar reasons, the evidence regarding Austin is relevant to explain the background and circumstances of Defendant's arrest. *See Green*, 617 F.3d at 247 (holding, in the context of Rule 404(b), that it is proper to admit background evidence that "allow[s] the jury to understand the circumstances surrounding the charged crime"); *United States v. Martin*, 262 F. App'x 392, 397 (3d Cir. 2008) ("Police officers may testify about the underlying circumstances of the arrest subject to proper evidentiary standards."); *United States v. Hawkins*, No. 05-06, 2006 WL 1699437, at *2 (W.D. Pa. June 19, 2006) (finding evidence of shooting that occurred shortly before defendant was stopped and arrested relevant to "complete the story" relating to arrest (quoting *United States v. Kennedy*, 32 F.3d 876, 885 (4th Cir. 1994))).

We recognize that characterizing evidence as "background" does not automatically render it admissible, particularly in a case that does not involve a charge of conspiracy or aiding and abetting. *See United States v. Steiner*, 847 F.3d 103, 111-12 (3d Cir. 2017) (holding Rule

404(b) evidence not admissible "in the name of background" where "[t]here was no need for the government to explain a complicated backstory."). However, the Third Circuit has not suggested "that conspiracy cases are the only ones in which background facts may be admissible." *Id.* at 112. To the contrary, "[t]here may—and likely will—be other situations in which [evidence offered for the purposed of providing background] is admissible outside of the conspiracy context." *Id.* at 112-13. This is such a case. As noted above, the evidence related to Austin is necessary to explain why Officers Roher and Olesik initially detained Defendant, why the police searched for and obtained the Residence Video, and why Defendant was charged with the possession of the semiautomatic firearm.

Having found that the disputed evidence is relevant, we must also address whether its admission is appropriate under the balancing test of Rule 403. *See United States v. Bailey*, 840 F.3d 99, 117 (3d Cir. 2016) (noting that district court should explain its Rule 403 analysis on the record). Defendant principally argues that the evidence related to Austin is unfairly prejudicial because it may suggest to the jury "that [Defendant] copied or emulated" Austin's conduct, or mislead the jury into attaching undue weight to Austin's conduct. (Def.'s Mem. 3.) The evidence revealing that two guns were recovered on the night in question and connecting Austin to the revolver is certainly detrimental to Defendant's case, but it is not unfairly prejudicial. *See, e.g., Starnes*, 583 F.3d at 215 ("[U]nfair prejudice does not simply mean damage to the opponent's cause." (citation and internal quotation marks omitted)). The evidence does not have an undue tendency to mislead the jury or suggest a decision on an improper basis. *Hagins*, 452 F. App'x at 148. To the contrary, exclusion of the evidence is more likely to do both, as it would require the jury to render its decision based on an incomplete and distorted picture of the relevant

11

facts.[6] Moreover, to the extent the disputed evidence carries any risk of unfair prejudice, that danger does not substantially outweigh the highly probative value of the evidence discussed above.

B.  **Testimony of Officers Roher and Olesik**

With respect to Officers Olesik and Roher, Defendant seeks to preclude any testimony regarding their participation in or roles with the tactical squad and regarding their prior knowledge of Defendant and Austin. In its response, the Government noted that "[t]he background of Officers Olesik and Roher is relevant to the extent that it simply provides context for the jurors to understand the officers' actions on the night of the arrest." (Gov't Resp. 8.) The Government further responded that "the officers' background, experience, and training is relevant to explain how the officers were familiar with [Defendant] before the night of his arrest." (*Id.*) However, the Government stated that it "does not intend to introduce evidence of [Defendant's] criminal past or reputation." (*Id.*) At the July 23, 2019 hearing on Defendant's Motion, counsel for the Government further clarified its intention, stating:

> [The prosecution] wouldn't bring up any of the matters or issues that the defense is concerned about at trial concerning the background of the defendant, how the officers knew him, that they were on a special patrol looking for—or why they actually—this whole incident began when the defendant and his companion were sitting together, that caught the officers' attention . . .
>
> For purposes of trial, the only evidence that has been cited by the defense as to the two officers that we would introduce is, . . . where did they work, what was their squad, and what were their duties for that particular day, and that is it.

---

[6] The evidence regarding Austin also is not needlessly cumulative but, rather, is essential to an accurate presentation of the facts. *See United States v. Cross*, 308 F.3d 308, 326 (3d Cir. 2002) (noting that evidence is not needlessly cumulative unless "it adds very little to the probative force of the other evidence in the case," such that its contribution is outweighed by considerations such as the length of trial and potential for confusion (citation and quotation marks omitted)).

12

(7/23/2019 Hr'g Tr. 7-8, ECF No. 159 (on file with Court).)

As clarified by the Government, the proffered testimony regarding the experience, assignment, and duties of Officers Roher and Olesik is relevant to provide background and context for the officers' actions on the night in question. *Green*, 617 F.3d at 247 (holding, in the context of Rule 404(b), that it is proper to admit background evidence that "allow[s] the jury understand the circumstances surrounding the charged crime"); *United States v. Martin*, 262 F. App'x at 397 ("Background evidence is 'universally offered and admitted as an aid to understanding.'" (quoting Fed. R. Evid. 401, advisory committee notes)). We are also satisfied that the probative value of such testimony is not substantially outweighed by the danger of unfair prejudice, particularly where the Government has represented that it does not intend to elicit testimony regarding Defendant's background or previous contacts with law enforcement.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion in Limine will be denied. Defendant may renew his objections with respect to specific evidence at trial and may request that appropriate limiting instructions be given to the jury.

An appropriate order follows.

**BY THE COURT:**

*(signature)*

R. BARCLAY SURRICK, J.
