IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 17-90-01 |
| MARK MANIGAULT | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                                                                          **MAY 18**, **2021**

A jury found Defendant Mark Manigault guilty of possessing a firearm as a convicted felon. Over Defendant's objection, digital video evidence was admitted during the trial showing Defendant placing a firearm on top of a tire inside the wheel well of a car. Defendant contends that he is entitled to a new trial under Federal Rule of Criminal Procedure 33. (ECF No. 223.) He argues that the digital video evidence was improperly admitted into evidence. For the reasons that follow, Defendant's Motion will be denied.

**I.**     **BACKGROUND**

On February 16, 2017, a grand jury returned a one-count Indictment charging Defendant with being a convicted felon in possession of a firearm, specifically, a nine-millimeter semiautomatic handgun, in violation of 18 U.S.C. § 922(g)(1). (Indictment, ECF No. 4.) The handgun was loaded with 12 live rounds of ammunition. After a three-day trial beginning on February 3, 2020, the jury found Defendant guilty.[1] The relevant facts are as follows.

---

[1] Prior to trial, Defendant proceeded in his case *pro se* with court-appointed standby counsel. Just prior to the start of trial and at Defendant's request, his stand-by counsel was appointed as his attorney for trial and post-trial proceedings.

On the night of September 27, 2016, Philadelphia Police Officers Eugene Roher and Jeremy Olesik were working in the area of the 5400 block of Osage Avenue. (Feb. 3. Tr. 53-54, ECF No. 215.) While on patrol, at approximately 11:00 p.m., the officers saw Defendant and Tamir Austin sitting on the steps outside the front of a residence at 5407 Osage Avenue. (Feb. 3 Tr. 54.) At that time, Officers Roher and Olesik were assigned to the tactical squad of the 18th District and served as intelligence officers. (Feb 3 Tr. 51.) As members of the tactical squad, the officers' duties included trying to prevent crimes such as rapes, robberies, aggravated assaults, shootings, and homicides. (*Id*. at 52.) The officers were familiar with the surrounding area at 54th and Osage Avenue. (*Id*.) They were also familiar with Defendant and Austin and knew that they did not live at 5407 Osage Avenue. (*Id*. at 56-57.)

The officers were suspicious that Defendant and Austin were sitting together at a home at which neither lived, so they decided to circle the block. (*Id*. at 55-58.) When the officers circled back to the location, Defendant and Austin had moved from 5407 Osage to the front stoop of the Katnip Café. The Katnip Café is located on 54th Street near the intersection with Osage Avenue. (*Id*. at 56; Gov. Ex. 1-1 to Gov Ex. 1-5.)[2] The officers stopped their car, walked over to Defendant and Austin, and began speaking with them. (Feb. 3 Tr. 56-57.) Defendant and Austin immediately lifted their shirts and exposed their waistlines to show the officers that they were not carrying weapons. (*Id*. at 57.)

As Officer Olesik continued to talk with Defendant and Austin, Officer Roher walked back toward the location where the officers had first seen the two men and, using a flashlight,

---

[2] The Government and Defendant both admitted exhibits during the trial. "Gov Ex. __" refers to the Government's exhibits and "Def. Ex. __" refers to the Defendant's exhibits. All exhibits are on file with the Court.

looked under the wheel wells of vehicles parked on the street.[3]  (Feb. 3 Tr. 58-59.)  While doing so, Officer Roher saw the black handle of a handgun under the rear, passenger side wheel well of a black Mazda parked facing west on the north side of Osage Avenue.  (*Id.* at 59.)  Upon finding the gun, Officer Roher notified Officer Olesik, and the officers placed Defendant and Austin in the back of their police car.  (*Id*.)  Both officers walked back to the car where Officer Roher had observed the black handle of a handgun.  (*Id.* at 34-35.)  The Officers then continued walking, retracing the route Defendant and Austin had taken.  (*Id*.)  As they did this, the officers saw a second firearm under the front, passenger side wheel well of a different vehicle, a red Ford.  (*Id.* at 60.)  The officers then returned to the corner of the Katnip Café without retrieving the firearms.  (*Id*. at 60.)

Officer Roher went into the Katnip Café and viewed the videotape from a security camera at the front exterior of the premises.  (*Id*. at 61-62; Gov. Ex. 3.)  The video retrieved from the Katnip Café shows Defendant and Austin walking on Osage Avenue, and Austin placing an object under the rear, passenger side wheel well of the black Mazda.  (Feb. 3 Tr. 71-73; Gov. Ex. 2.)  Defendant does not object to the admission of this surveillance video during trial.  After calling other police personnel to secure the scene, Officers Olesik and Roher handcuffed Defendant and Austin and transported them to the Southwest Detective Division for further investigation.  (Feb. 3 Tr. 117.)[4]

---

[3] Officer Roher testified that, in his experience, it is "customary for people to hide guns or contraband or both on the sidewalk, under wheel wells, [and] on porches."  (Feb. 3 Tr. 58.)

[4] Austin ultimately entered a plea of guilty in the Court of Common Pleas of Philadelphia County to charges of firearms not to be carried without a license, possession of a prohibited firearm, and carrying firearms in public in Philadelphia.  *See Commonwealth v. Austin*, No. CP-51-CR-0011022-2016 (Phila. Cty. Ct. Com. Pl.).

3

A couple of days later, on September 29, 2016, Detective Michael Kimmel of the Southwest Detective Division recovered another video from the night of September 27, 2019. (Feb. 3 Tr. 189-90.) This video was obtained from a digital recorder at a private residence on the 5400 block of Osage Avenue (the "Residence Video"). (*Id.*; Gov't Ex. 2.) This is the video on which Defendant bases his Motion for a New Trial. The homeowner had an outdoor video camera that recorded an eastbound view of Osage Avenue. The homeowner gave Detective Kimmel permission to view the footage from two nights prior. (Feb. 3 Tr. 191.) Detective Kimmel viewed the video on the homeowner's phone because the actual monitor associated with the home security digital video recording ("DVR") device was not working. (*Id.* at 190.) To preserve the video evidence, Detective Kimmel downloaded the phone application associated with the home security DVR device—Night Owl. (*Id.* at 191.)[5] He then was able to view the DVR and download it onto his phone. (*Id.* at 192.) Detective Kimmel returned to his office and transferred the video from his phone to his computer. (*Id.*) He also uploaded a copy to the Axon Command system, which is a digital cloud-based storage locker used by the Philadelphia Police Department. (*Id.* at 192, 194.) He then deleted the app and the video from his phone to free up space. (*Id.* at 193.) Detective Kimmel testified that there was no difference between the video footage he viewed on his phone and the video footage saved to his computer and the Axon Command System. (*Id.*)

The Residence Video shows Defendant and Austin walking together, and Austin placing an object on the tire of the black Mazda where the officers located the first firearm. (Gov. Ex.

---

[5] Detective Kimmel testified that he typically would have put a USB drive into the actual security device and download the video that way; however, he could not do that because the monitor was not working properly. (Feb. 4 Tr. 24, ECF No. 216.)

4

2.) The video also shows Defendant placing an object under the front, passenger side wheel well of the red Ford where the second firearm was found. (*Id*.) The video was published for the jury.

Trial took place from February 3, 2020 to February 5, 2020. The jury found Defendant guilty. Defendant argues that he is entitled to a new trial because the Residence Video should not have been admitted into evidence and published for the jury.

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 33 provides that a court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "[M]otions for new trials are disfavored and are only granted with great caution and at the discretion of the trial court." *United States v. Crim*, 561 F. Supp. 2d 530, 533 (E.D. Pa. 2008), aff'd, 451 F. App'x 196 (3d Cir. 2011) (citing *U.S. v. Martinez*, 69 F. App'x 513, 516 (3d Cir. 2003)). We may grant a new trial if we find that an error occurred during the trial "and it is reasonably possible that such error, or combination of errors, substantially influenced the jury's decision." *Id*. (quoting *United States v. Copple*, 24 F.3d 535, 547 n.17 (3d Cir. 1994)).

## III. DISCUSSION

Defendant's request for a new trial is based entirely on the admission of the Residence Video. This video showed Defendant handling the illegal firearm and placing it under a wheel well of a nearby parked car. Defendant argues that the Court erred in admitting the Residence Video because Detective Kimmel deliberately destroyed the original video by deleting it from his phone. Defendant claims that Detective Kimmel's act of deleting the "original video" constituted bad faith and therefore the video should not have been played for the jury pursuant to Federal Rule of Evidence 1004. Defendant also contends that introduction of the video violated

5

"his ability to confront the evidence against him" and violated his due process rights. (Def.'s Mot. 1, ECF No. 223.) Defendant's arguments are without merit.

Rule 1004(a) states that "[a]n original is not required and other evidence of the content of a writing, recording, or photograph is admissible if: (a) all the originals are lost or destroyed, and not by the proponent acting in bad faith." Fed. R. Evid. 1004(a). As to the second inquiry—bad faith—the negligent destruction of the original is not enough. *See Cross v. United States*, 149 F.3d 1190 (10th Cir. 1998); *Gardner v. Schumacher*, No. 21-0003, 2021 WL 124723, at *26 (D.N.M. Jan. 13, 2021). Rather, "the purposeful destruction or withholding of original documents and the fabrication of secondary evidence" is required to show bad faith. *Cross*, 149 F.3d at 1190.

Defendant argues that Detective Kimmel acted in bad faith by: (1) deleting the video from his phone after uploading it to his computer at the police station; (2) providing inconsistent testimony about whether he was trained to recover video footage from cell phones; and (3) failing to follow Philadelphia Police Department directives regarding the recovery of digital evidence. Contrary to Defendant's argument, there is nothing in the trial record or the pretrial record—which included numerous evidentiary hearings on the admissibility of evidence—that supports a finding that Detective Kimmel acted in bad faith or engaged in the deliberate destruction of the evidence. Detective Kimmel deleted the video on his cell phone after uploading exact replicas of the video to his computer and to the Axon Command system. Detective Kimmel testified that there was no difference between the video footage he viewed on his phone and the video footage saved to his computer and the Axon Command System. He testified that he only deleted the video on his cell phone to free up space and not to destroy original evidence in a criminal case. After a thorough review of the trial transcripts and pretrial

hearing transcripts in this case, we are satisfied that Detective Kimmel provided completely consistent testimony. In fact, we watched Detective Kimmel testify on at least three occasions in this case and we find him to be a credible witness who handled the collection of the Residence Video properly.

Defendant also argues that the Residence Video should have been suppressed because Detective Kimmel violated Philadelphia Police Department directives related to the collection of digital video evidence. This argument also lacks merit. Whether or not Detective Kimmel violated police directives when he recovered the Residence Video is of no consequence: it does not support a finding that Detective Kimmel intentionally destroyed evidence. Defendant cross-examined Detective Kimmel extensively on his recovery of the Residence Video and on his adherence to the police directives. The jury had ample opportunity to assess the credibility of Detective Kimmel and the credibility of the video evidence.

Defendant also contends that his due process and Confrontation Clause rights were violated. However, he makes no arguments to support these contentions. The Sixth Amendment's Confrontation Clause guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. A defendant's confrontation right is violated when the government introduces a testimonial out-of-court statement without making the declarant available for cross examination. *Davis v. Washington*, 547 U.S. 813, 823-26 (2006). There is no declarant or out of court statement here. Defendant was observed on a home security video placing a firearm under a wheel well of a parked car. Defendant has cited to no case, and we are aware of none, that supports a finding that admitting video evidence like this at trial implicates a defendant's Sixth Amendment right to be confronted by witnesses against him. There was also no due process violation here. "The fundamental requirement of due process is

the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks omitted). The evidence simply does not support Defendant's baseless allegation that Detective Kimmel intentionally and maliciously destroyed the Residence Video.

There was no error made that warrants a new trial. Even if the video had been admitted in error, there was significant other evidence in this case pointing to Defendant's guilt. For example, there was other video evidence—the admissibility of which is not disputed—showing Austin placing a firearm under the wheel well of a black Mazda. Officer Roher testified that he discovered a firearm under the wheel well of a red Ford parked just a few cars away from where the black Mazda was parked. The firearms were discovered on Osage Avenue, which was the street that Defendant and Austin had walked down after first being spotted by law enforcement at the private residence. Based on this evidence, a jury could reasonably conclude that, like Austin, Defendant also ditched his firearm under the wheel well of a car parked on Osage Avenue.

Defendant has made persistent efforts to suppress the Residence Video. It shows him clearly committing the crime with which he is charged. Nevertheless, we gave Defendant numerous opportunities to probe the circumstances under which video evidence was collected and stored. He conducted numerous evidentiary hearings on the issue of digital video evidence. We permitted Defendant to hire a forensic expert to assist in this regard. Even Defendant's forensic expert was unable to find anything wrong with the video evidence. The Residence Video was properly authenticated and admitted into evidence at trial.

**IV. CONCLUSION**

For the foregoing reasons, Defendant's Motion for a New Trial under Rule 33 will be denied.

An appropriate order follows.

                                     **BY THE COURT:**

                                     */s/ R. Barclay Surrick*
                                     **R. BARCLAY SURRICK, J.**